## VAN RENSSELAER *v.* CHADWICK.

Where tenants in common of land subject to a rent-charge, upon a partition, interchange conveyances of the respective parcels, subject, in terms, to the claims of the lessor, an apportionment of the rent is effected if the lessor concurs in the arrangement.

The release by the lessor, in such a case, to one of the tenants of the parcel partitioned to him, only extinguishes the rent as to the parcel so released; the other parcel remains liable to its due proportion.

ACTION to recover certain arrears of rent, among which was the rent reserved on a conveyance in fee of a certain lot No. 75, executed by Stephen Van Rensselaer, deceased, under whom the plaintiff claims as devisee, to one Andrew Spickerman, dated February 10, 1803. The provisions of the conveyance were similar to those contained in the one which was before the court in *Van Rensselaer* v. *Hays* (19 N. Y., 68). The plaintiff claimed that the estate of the grantee in a part of the lot, viz., in 140 acres, had become vested in the defendant by assignment; and he sought to recover a proportionate part of the rent reserved in respect to that part of the lot.

It appeared on the trial that the lot, together with other lands held under similar conveyances, was owned by one Aaron Chadwick, who died in 1838, leaving the defendant and his brother John his heirs-at-law. In 1841, the defendant and John Chadwick made partition of the lands they had thus inherited, and executed to each other mutual deeds of release and quit-claim. The deed from John to the defendant embraced $142\frac{85}{100}$ acres of lot No. 75, and the one from the defendant to John embraced the residue of the lot, being about 20 acres. At the end of the *habendum* clause in each of the deeds, there were added the following words: "Subject to the claims of Stephen Van Rensselaer, Esq., proprietor of the soil."

On the 19th August, 1842, the plaintiff, being the owner of the rents as devisee of his father, together with his wife, conveyed to John Chadwick the premises embraced in the deed

of the defendant to said John.   This deed of the plaintiff contained full words of grant, release and quit-claim, and expressed a pecuniary consideration.

The defendant contended that the effect of this deed was to extinguish the rent upon the whole lot; but the judge held otherwise, and judgment was given for the plaintiff, the defendant excepting.   The judgment was affirmed at general term in the third district, and the defendant appealed here.

*Anson Bingham*, for the appellant.

*Charles M. Jenkins*, for the respondent.

DENIO, J.   Rent reserved upon a conveyance in fee is a rent-charge, and not a rent-service. (*Van Rensselaer* v. *Hays*, 19 N. Y., 68.)   The rule of the common law seems to be, that a release of a part of the land charged with such a rent extinguishes the entire rent.   Littleton states the rule as follows: "If a man hath a *rent-charge* to him and his heirs issuing out of certain land, if he purchase any parcel of this to him and his heirs, all the rent-charge is extinct.   But if a man which hath a *rent-service* purchase parcel of the land out of which the rent is issuing, this shall not extinguish all, but for the parcel; for a rent-service in such case may be apportioned according to the value of the land." (§ 222.)   He speaks only of a purchase of part of the land by the party entitled to the rent; but the rule is the same if the one so entitled release a portion of the land from the charge.   It is said to extinguish the rent. (Cruise's Dig., tit. 28, Rents, ch. 3, § 16; 18 Vin. Ab., 504.)   It is thus stated in the old books: "If a person, having a rent-charge issuing out of three acres of land, releases all his right in one acre, the rent is extinct, because all issues out of every part, and it cannot be apportioned." (Brooks' Ab. Apportionment, 17.)

The distinction in this respect between a rent-service and a rent-charge arose out of the theory of feudal tenures, and was founded upon reasons which are inapplicable to the existing

state of society; but it has become matter of positive law and a rule of property, and should be adhered to, where it is applicable, without regard to the circumstances under which it was introduced. If, therefore, the rent sought to be recovered in this suit exists, it must be by force of the acts of the several owners of the two parcels of land which were together charged with the rent. The Supreme Court sustained the recovery on that ground, and I think their judgment was correct.

The reason why a release of part of the land extinguishes the whole rent is that a rent-charge cannot be apportioned; and, according to Lord Coke, the impediment to an apportionment is, that the rent is entire and against common right, and issues out of every part of the land. (Co. Litt., 147, b.) But there is nothing in the nature of a rent-charge which absolutely prevents its being apportioned. For it is well settled that where the division of the land charged, into several portions, is by the operation of law, an apportionment will take place. Thus, according to Littleton, "If a man hath a rent-charge, and his father purchase parcel of the tenements charged, in fee, and dieth, and this parcel descends to his son who hath the rent-charge, now this charge shall be apportioned according to the value of the land, as is aforesaid of rent-service; because such portion of the land purchased by the father cometh not to the son by his own fact, but by descent and course of law." (§ 224.) This proves that the extinguishment of the charge as to a portion of the land does not necessarily and under all circumstances prevent an apportionment. In the case which Littleton puts, the fact which led to the partial extinguishment was the act of a stranger—the father of the grantee of the rent— and of the law of descents which united the title to the rent and to a portion of the land charged, in the grantee of the rent, and therefore extinguished it as to that parcel; but this not being the act of the grantee did not prejudice the charge as to the remaining parcel, but brought about an apportionment. To the same purpose Chief Baron GILBERT says: "But the law has carried the former position of extinguishment only to

such cases where the grantee of the rent *willfully by his own act* prevents the operation of the grant according to the intention thereof; for if part of the land descends to the grantee of the rent-charge, the rent shall be apportioned according to the value of the land." (Gilbert on Rents, 155, 156.)

In the case before us, the apportionment was effected, or at least invited, by the owners of the land charged with the rent. The defendant and John Chadwick together owned the whole lot subject to the charge. The plaintiff was seised of the rent, which was an entirety, and not apportionable by any independent act of his. But clearly he and the owners of the lot were together competent to effect any modification of the rent which was not in itself contrary to law; and we have seen that a rent-charge as well as a rent-service is in its nature apportionable. Then, the effect of the quit-claim deed, executed between the two brothers Chadwick, was not only to divide the land between them, but, so far as they were capable of doing it, to subject each parcel to its proper portion of the rent, and also, as between themselves, to exonerate each portion from the rent properly chargeable on the other's portion. This arrangement would not of itself affect the rights of the plaintiff at law. In equity the principle of marshaling burdens would compel him so to use his remedies as not to do injustice to either of the parties. But the plaintiff was in a situation to give complete effect to the arrangement by concurring in it on his part; and this he did by dealing with John Chadwick alone as to the rent equitably chargeable upon his part of the land. As to that part of the rent the defendant and his part of the land, were completely exonerated by the release to John. But the defendant by accepting the deed from John for the 142 $\frac{95}{100}$ acres expressed in terms to be subject to the rent chargeable upon it, is estopped from setting up that the act which he himself thus proposed and invited, or at least consented to, should operate to discharge that portion of the rent.

The books furnish examples of new arrangements effected by the acts of the parties operating, in substance, as an appor-

tionment of rents-charge. Thus, Coke lays it down on the authority of several cases cited from the Year Books that "if the grantee of a rent-charge purchase parcel of the land, and the grantor by his deed reciting the said purchase of part, granteth that he may distrain for the same rent in the residue of the land, this amounteth to a new grant, and the same rent shall be taken for the like rent or the same in quantity." (Co. Litt., 148, a.) Cruise states this as a common mode in which part of the land subject to a rent-charge may be exonerated without hazarding the remedy against the remainder; but he adds that it is liable to the material objection that being held to be a new grant of the rent-charge it would let in intermediate incumbrances. (3 Cruise, 345, § 17.) If the transactions of the parties interested in this lot and this rent should be held to create a new rent instead of an apportionment of the old, it would not be such a departure from the substance of the claim as to entitle the defendant to prevail in the action.

But if we assume that at law there has been a technical extinguishment of the rent, by the release to John Chadwick, the defence can only prevail in a court of law. Where there has been no actual satisfaction, and the act which is claimed to be an extinguishment was done in ignorance of the parties' rights, the rent is considered to be apportionable in equity. (1 Fonb. tr. Eq., 337.)

I am in favor of affirming the judgment of the Supreme Court.

All the judges concurring,

Judgment affirmed.