Shea, Ch. J.
This case arises from an executed contract. The plaintiff claims to recover from the de *197 fendant an amount of money, being a proportion of arrear-rent paid by Mm to Columbia college, and for which it is claimed the defendant is liable under a covenant in that contract. While the action is brought upon that covenant, yet its scope and meaning comprehend the entire equities of the case.
The counsel for the respective parties suggest to the court that the question presented for adjudication is one of first impression, and not only interesting in itself, but important even beyond this case, as it will be likely to affect transactions growing out of negotiations similar to the subject matter of this action. I apprehend that the question might be of frequent occurrence ; and, therefore, in response to the suggestion, I will express at length the reasons which require judgment to be in favor of the plaintiff for his claim—a judgment which, in my opinion, will be found justified by the principles of law and equity.
There is no contest as to the facts and circumstances. They are conceded to be as follows : The defendant owned a lease of certain allotments of land, situate in the city of Few York, which he held of Columbia college. By a contract he agreed to sell that lease to the plaintiff for twelve thousand dollars, to be paid in a manner which has no bearing on the question litigated. That contract, however, contains this special promise: that the defendant should at his own cost and expense execute and deliver to the plaintiff, or his assigns “ a full transfer of all his ownership whatever of this leasehold interest, free from all incumbrances,”— and then the contract further provides that the defendant shall, at his own expense, get Columbia college authorities to reapportion the ground into three lots, each twenty by one hundred feet,—“assignment shall contain a full release” to the defendant. The college trustees, it appears, instead of consenting to assignments in such transactions, require a surrender from the *198 lessee of the existing lease, and, if they approve of it, then issue a new lease, for the unexpired remainder of the original term, to the substituted tenant, and release the original lessee from all further obligation. This course, it will be seen, allows the college an occasional .supervision as to the character of its tenantry, and some sort of prevention against the land being used by irresponsible persons, or for unworthy purposes. The rent was, annually, nine hundred and sixty dollars, 'payable, by the terms of the original lease, in semiannual installments, on the first days of May and November in each and every year during the term. In pursuance of this contract the defendant surrendered the original lease to the college ; the purchase money was paid ; the land reapportioned into three lots ; and the new lease, for the part of the term unexpired, issued to the plaintiff and his assigns. The plaintiff subsequently had to pay the whole of that current installment of rent which accrued May 1, 1871, to protect himself from eviction, and the lease from forfeiture. The time stipulated by the contract for its performance was April 18,1871, so that the current half year had nearly expired.
The question presented upon these circumstances is this: which of the parties, as they themselves have omitted to provide in their contract for this exigency, is in law and in equity chargeable with the six months’ installment so paid, and which became due and payable subsequent to the day that the contract was to be arid was performed : although accruing at that time ?
First. Let this cause be considered as presented upon the obligation of that covenant against incumbrances. In my opinion, the action cannot be maintained for a breach of the covenant. Is an accruing installment of rent an incumbrance ; the obligation for which, already incurred, will ripen into a perfect claim ; and is it within the legal effect of such a cove *199 nant ? A covenant against incumbrances is broken by the existence of any debt which is a lien- upon the land; and an usual instance is: when taxes are assessed at the time of, not after, the execution of a deed (Hutchings v. Moody, 30 Vt., 657; Spring v. Tongue, 9 Mass., 28). An incumbrance, strictly speaking, must exist at the date of the deed ; and it is one of those covenants where a breach accrues, except in the instance, perhaps, of inchoate dower, instanter (Jones v. Gardner, 10 Johns., 266: Powell v. Monson, &c., 3 Mas., 355; Shearman v. Ranger, 22 Pick., 447). A tax has no existence until it is laid; it is the act of the law, not of the vendor; its object, its amount, and rate, rest in possibility ; it does not, unlike an inchoate dower, have a legal existence before being assigned and fixed. Rent comes within the proper office of a covenant, when the parties so agree ; for it is the act of the lessee ; it is created by his own action ; its time of payment is set; its conditions known, and the obligation to pay rent is for the whole term. Taxes, when assessed, are a lien by law. Rent, whether in arrear or accruing, is of a different, and it will be seen, peculiar nature.
In my opinion, rent, not accrued, is not an incumbrance ; and does not fall within the effect of the covenant referred to. Rent, before it is due and payable, is not a debt, essentially and certainly, as between landlord and tenant. It is unlike the usual cases of money payable on a precedent condition. For the purpose of illustrating this point of view, it may be likened to the inchoate right of dower which is not determinately an incumbrance until assigned and fixed. I, of course, here refer to executed contracts ; wherein the grantee has no right of action until actual breach, and when he, as it were, becomes subrogated to the claim of the incumbrancer and he enforces it in *200 the way of indemnity through the obligation of the covenant. As to executory contract, when the land is subject to liens, the doctrine, as we have seen, appears to be different (See Jones v. Gardner, already cited). Besides, rent, by an actual or constructive eviction, might be defeated; or by the death of the owner go to the heir at law, and not to the personal representatives. It even when due does not become a lien, in any accurate sense of that word, upon the land or the demised interest. Landlords, to be sure, can evict the tenant, can forfeit the lease, because of non-payment of rent in arear ; but this is an incident' peculiar to the very relation of landlord and tenant; and not because rent in arrear is an incumbrance or lien. Eviction is an ouster, by the paramount title reviving by condition of forfeiture ; and hence it is that an assignee of a leasehold can pay the arrear-rent to protect his right of tenancy, and thereby become subrogated to the personal claim of the landlord.
It is more proper to say, that this right of subrogation, and not such a covenant, is the true source of claim for indemnity. Chief Justice Shaw seems to have treated it as a subrogation, when he says, 1 ‘ When a paramount title exposes the grantee to the loss of his whole estate by eviction, the sum which he pays to extinguish such incumbrance is the measure of damages ; ” and the instance, which he says this of, is one wherein an inchoate right of dower was already assigned and fixed.
There are some of the cases cited which may as well be here considered. They will be seen, I think, to illustrate a different principle; one not applicable to the circumstances of this cause. Among these decisions is Jones v. Gardner (already referred to). That was an action brought upon an executory contract to recover the purchase money. The deed was tendered ; and refused by the purchaser because there was, affecting *201 the estate, an inchoate right of dower; and it was held, that a covenant to convey the title means the legal estate in fee, free from all valid claims, liens or incumbrances whatever. Had this deed been delivered, and the contract executed, the plaintiff might have had no right of action until after the dower accrued, was assigned and fixed. Spring v. Tongue, 9 Mass., 28, was an action brought to have the plaintiff therein reimbursed for an assessment made upon a pew which he had purchased from the defendant. It was neither a tax, nor for rent, but an assessment to replenish an exhausted fund for the building of the church. The assessment, at most, was a mere possibility at the time of the sale of the pew, and in no sense the act of the vendor. The case of Hutchings v. Moody, also already referred to, belongs to the same classification of cases.
It must also be remembered, while we are considering the plaintiff’s claim as made upon the covenant, that the installment of rent, accruing and not yet due, was patent on the face of the lease, and must have been known to each of the parties to this general covenant. A lease should be inspected by the purchaser; if not, then he has omitted to use his opportunity; and the doctrine caveat emptor concludes him (1 Sugden on Vendors, 8); and a general covenant against incumbrances does not comprehend a relief from an incumbrance which is known to each party at the time of contracting.
For these reasons the court is of the opinion that there has been no breach of this covenant, in what is alleged as the payment of arrear rent; and that the plaintiff cannot maintain this action on that covenant.
Second. Is there then anything to be found in the transaction itself, between the parties to this action, upon which it should be maintained ? I think that there results from the transaction itself, a legal obligation by which each party having had, during the time, *202 a substantial benefit from the use- of the premises, is, by a plain equity, required to contribute to the payment of the current half-yearly installment of rent, in the nature of an apportionment. There is no principle in law or in equity jurisprudence to the contrary of this ; there is no decision conformable to the circumstances of this case which stands in the way. Whatever decisions we have on the doctrine of apportionment and contribution are in strong analogy to such a view ; and a contribution in apportionment is certainly in close affinity and justification with those fundamental elements of justice which are acknowledged in all like cases: excepting those within the relation of landlord and tenant. Indeed, when we rid our minds of the untrue and confusing analogies which we have brought from the strict rules of law, peculiar to that relation, we are enabled to see more clearly the true legal obligations of the parties to this contract. Rent is an entirety, and not apportionable as between landlord and tenant only ; the technical reason for this is exceptional, and limited to that exception; and is said to be found in the obligations of rent charges and rent service in feudal tenures. Why should that which is an exception, and belonging to a system peculiar to a political relation foreign to the polity and genius of our State, be amplified and elaborated into a rule of general jurisprudence ? Why should exception thus grow into a rule ? And it is declared, by authority, in this State, that there is nothing now in the nature of a rent charge which absolutely prevents its being apportioned (Van Rensselaer v. Chadwick, 22 N. Y., 35).
Apportionment of rent is not unfamiliar to the administration of the law. In equity it is apportionable generally; or rather, each beneficiary is required to contribute according to the benefit he has shared in the use of the premises. The cases are numerous and various in circumstances. And they comprehend cases of *203 adjustment of common interests, even between tenant and landlord, or remainder-man, and between tenants themselves. The governing principle avowed in each of those cases leaves no doubt as to the doctrine applicable here, and guides us to a proper determination of this case.
It was upon similar equity that Sir William Grant, in Dyer v. Hargrave, 10 Ves. Jr., 505, decided “ that it would not be just to make the purchaser pay the whole purchase money after part of the term, is elapsed,” and compelled the vendor to pay a rent for the time he occupied the leasehold estate when delay occurred in delivering possession to the purchaser. The purchaser, to be sure, was decreed to pay interest on the purchase money from the date on which the contract should have been performed ; as, by legal relation, it was performed as of that day. And so it might be, in our present case, by a parity of equity, if the contract here related back to the beginning of that current half-yearly installment'; but a corresponding compensating obligation would then result as against the other party. For, in another case, where the parties had omitted to provide, in their contract, a special provision as to the point, it is said that equity would presume an intention of the parties to treat the rent as accruing, pro tanto, from day to day ; and as a debitum in presentí, solvendum in futuro (1 Story Eq. Jur., § 482; Exp. Smyth, 1 Swanst., 337, note); and in Van Rensselaer v. Chadwick, cited already, this principle receives a forcible and-, for our case, almost authoritative illustration; for that case is akin to this. That cause of action was for arrear-rent. The effect, in law, of a quit-claim deed executed between two brothers was declared not only to divide the land between them, but so far as they were capable of doing it (that is, as between themselves), to subject each parcel to its proper proportion of the rent; and so, also, as between them, *204 seines, to exonerate each portion from the rent properly chargeable on the other portion. (Jive this decision of the court of appeals its necessary and intelligent effect as a precedent and it should dispose of the question presented and now under consideration.
It is better for me to call attention to a case reported in 1 Anstr. (King v. Wightman), p. 80, as it might be supposed to sustain a ruling contrary to the doctrine enunciated by this decision. That case is not the ruling of a court upon the merits of a cause at all, but merely a decree entered by the consent of the parties ; and the bill was filed for the specific performance of an executory contract for the purchase of a lease. The case is not applicable ; and even if it were it is worthless, not being the decision of the court. As neither of the counsel, who have argued this cause before me, have cited that case, I apprehend that they have thought, as I certainly think, it of no value, and it should have no influence as an authority in the formation of a judicial opinion.
Third. But aside from all this, there is another reason for maintaining the rights of the plaintiff to recover a just proportion of that installment of rent from the defendant. The contract for the sale of the lease, so far as the parties before this court are concerned, was not between landlord and tenant; it is a question as to a collateral effect of the sale of an article of sale, as between vendor and vendee, as much so as if the article sold had been a horse and not a lease ; and suppose that the horse was at the time of such a sale on livery at a stable at a fixed price a month, that a current month was then accruing, and that the purchaser at the end of that month, in order to discharge the livery stable lien for the care of the horse, had to pay the whole month’s charge; now, in the absence of any provision, m the terms of sale, for this exigency, can there be a doubt as to the right of the vendee to pay *205 the lien, and thus acquire a right of action against the vendor for the proportionate part of the amount up to the day when the sale was perfected ? And where is the distinction in principle between such a case and that now before the court 1
Mr. Hull agreed to purchase from Mr. Stevenson .the lease of those lots, and to become, as to Columbia college, substituted in his stead as lessee and tenant, and the transfer was to contain a full release of Mr. Stevenson. Such agreements are not retrospective ; they are present or prospective, unless the intention be clearly otherwise. There are no words in this contract by which Mr. Hull assumes any obligation beyond being substituted as such lessee, and paying twelve thousand dollars as the purchase price. The release, then, must be as to all future liability. There was to be no formal assignment in which a release could be in terms embodied ; no release was designed other than such as would necessarily be effected by a surrender of the existing loose and the acceptance of Mr. Hull as successor ; that must be taken to have been the release intended. There was no affirmative assumption, by Hull, of any debts due or accruing, nor any covenant of indemnity for the release of Mr. Stevenson as to any such indebtedness.
The undertaking by Mr. Hull, in the new lease after surrender, to pay the accruing rent due May 1 ensuing, was not a part, therefore, of the contract of sale 5 but that undertaking afterwards became necessary so as to bring about from Columbia college, according to its regulations, the reapportionment of the land and the transfer of the lease, which Mr. Stevenson by that contract of sale covenanted to effect. Such undertaking to pay that rent, if not a subrogation in itself, became a very complete subrogation on the payment of the arrear-rent in consequence; and this was no more than necessary to give a full effect to the *206 very agreement of sale. The stipulation, on the other hand, that Mr. Stevenson be released, could receive no effective aid until this was done ; and, being done, was the indemnity to him as to all future liability. Mr. Hull was to get a title—that is, a clear title—to the property, for twelve thousand dollars. That was to be the extent of his payments. Mr. Stevenson was to transfer to him the remainder of his* term—that is all he had to sell. He could not convey a benefit in any part of the term which had expired ; and Mr. Hull did not agree to pay anything on account of what he could not receive and which he did not use.
The rent for the whole term is an entire consideration. The payment by semi-annual installments is a circumstance of its mere payment. There is no severance, in this case, as between these parties, effected by the payment by installments of the entirety of the annual rent. The whole is payable for the whole term, but in installments from time to time. The cases which consider like installments as separate and independent conditions precedent arise generally between landlord and tenant; and, as I have said before, owe their authority to a principle not applicable to the circumstances of this case. The contract of sale between the parties to this action cannot be said to have been made with any sort of reference to the accruing installment; but with relation to the rent for the whole of the unexpired part of the term. That a purchaser of a lease is liable, as between the parties to the contract of sale, for the rent accruing at the time, but not liable for that part of the entire rent payable at the preceding rent day, is a distinction a principle for sustaining which remains to be suggested. They are equally part of a whole as between vendor and purchaser. It is, therefore, the judgment of this court that the meaning and effect in law of such a contract of sale, wherein there is only a general covenant against incumbrances, and the *207 parties have omitted to provide in the contract for the exigency, that the new lessee assumes the rent only ; for the unexpired part of the whole term and has no personal obligation cast upon him for the rent of any part which has passed. Mr. Stevenson must be charged with the rent after the rate of nine hundred and sixty dollars a year, from November 1,1870, up to April 13, 1871, the day that the contract was performable, when he was released, and his further obligation ceased. For which, judgment, as estimated by the parties at-four hundred and eighty-three dollars and sixty-two cents, inclusive of interest, is given, with costs to the plaintiff, and twenty-five dollars allowance.
Judgment accordingly